IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KRISTE ANDREA CLAUSSEN, | Case No. 6:17-cv-00258-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

AIKEN, Judge:

Plaintiff Kriste Andrea Claussen brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

In September 2011, plaintiff applied for DIB. She alleged disability beginning September 16, 2011, due to disc protrusion and degeneration, foraminal stenosis, shoulder

impingement, arthritis, musculoskeletal pain, atrial fibrillation, sleep apnea, anxiety, depression, and irritable bowel syndrome. Plaintiff's application was denied initially and upon reconsideration. On September 17, 2013, plaintiff appeared at a hearing before an ALJ. On October 13, 2013, the ALJ issued a decision finding plaintiff not disabled. On March 20, 2015, the Appeals Council remanded for further proceedings. The issue was that plaintiff's last insured date had been calculated improperly and so the ALJ's decision did not address the entire purported disability period. On October 26, 2015, plaintiff appeared at a second hearing for the ALJ. On January 8, 2016, the ALJ issued a second decision, again finding plaintiff not disabled. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "status post left shoulder rotator cuff surgery; cervical degenerative disc disease; a history of fibromyalgia; right hand pain secondary to probable osteoarthritis; borderline obesity; and a history of anxiety with occasional panic attacks." Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c).

At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 22; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). The ALJ found plaintiff retained the residual functional capacity ("RFC") to

> perform a reduced range of light work with the following additional limitations. She is further limited to no more than occasional crawling and climbing of ladders, ropes, and scaffolds. She is also limited to no more than occasional overhead reaching bilaterally. She is limited to no more than occasional pushing and pulling with her left upper extremity. She is limited to no more than frequent handling, grasping, fingering, and feeling with her right hand. She is also limited to simple, repetitive, routine tasks requiring no more than occasional interaction with co-workers and the general public.

Tr. 24; 20 C.F.R. § 404.1520(e).

At step four, the ALJ concluded plaintiff could not perform any of her past relevant work as a waitress or customer service representative because "the demands of [that] work exceed either the lifting and carrying restrictions or the simple work requirement contained in the [RFC]." Tr. 31; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, such as shipping-and-receiving weigher, counter clerk, and usher/public attendant. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied her applications for benefits.

## DISCUSSION

Plaintiff contends that the Commissioner committed three harmful errors in evaluating her application for disability benefits. First, plaintiff argues that the ALJ impermissibly gave little weight to her testimony about her symptoms without providing clear and convincing reasons for doing so. Second, plaintiff challenges the ALJ's decision to discredit the opinion of her treating physician, Paul Pearson, M.D. Finally, plaintiff contends that the ALJ's step five finding cannot stand because all three jobs the ALJ identified at that step exceed plaintiff's RFC. Although I am unpersuaded by plaintiff's first two arguments, I agree that remand is necessary due to errors at step five of the sequential evaluation.

I. *Plaintiff's Subjective Symptom Statements*

Plaintiff challenges the ALJ's decision to give little weight to her testimony about the severity of her symptoms. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony

Page 4 – OPINION AND ORDER

about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In an Adult Function Report completed October 31, 2011, plaintiff reported that she quit her waitressing job in September 2011 because pain, weakness, and numbness in her arms prevented her from carrying plates, trays, and coffee pots. Her ability to do household chores was limited due to pain. She was unable to participate in prior hobbies such as knitting and cross-stitch, though she tried to go for "small walks" daily. Tr. 288. She was able to prepare simple meals, do laundry, help her daughter with her homework, and drive her daughter to school activities. She reported that pain woke her up "every few hours," preventing her from sleeping through the night. Tr. 289. She had to have her daughter's help brushing her hair and needed some assistance toileting due to restrictions on her ability to reach. She also required help carrying heavy objects. She could not hold objects in her hands due to weakness, pain, and numbness. She estimated she could walk a quarter of a mile or less before needing to stop and rest for ten minutes. When her pain level was high, she could pay attention for only one minute. She stated that her shoulder impingement, disc degeneration, musculoskeletal pain, and atrial fibrillation "make me feel like I was run over by a freight train & survived." Tr. 295. In a contemporaneous pain and fatigue questionnaire, plaintiff reported an "aching, burning toothache like pain in [her] neck & left shoulder" and "all over musc[ul]oskeletal pain." Tr. 309. Notably,

Page 5 – OPINION AND ORDER

plaintiff's statements on those forms predated her February 2012 surgery to repair a torn rotator cuff.

At the first hearing, in September 2013, plaintiff testified that her pain and limitations had improved post-surgery but any overhead reaching (for example, to wash her hair) remained difficult. She explained that she had done physical therapy and tried a "plethora of medications," both of which helped somewhat, but not for a long time[.]" Tr. 82. She reported taking walks every other day for thirty minutes; she estimated that she walked about a mile each time. She could stand for an hour at a time and sit for an hour at a time. She was able to help with household chores, drive two to three times a week, read, go shopping, and watch television. She noted problems sustaining attention while reading or watching television due to pain and the difficulty of finding a comfortable position. Plaintiff stated that she had obtained a part-time job as a cashier at a liquor store between November 2012 and July 2013. She quit that job because her hands were becoming numb, her pain level interfered with her ability to interact appropriately with customers, and she frequently had to call out sick due to pain and doctor's appointments.

At the second hearing, in October 2015, plaintiff confirmed that she had not worked since leaving the liquor store job in July 2013. She reported experiencing "all over body pain," chronic headaches, anxiety, sensitivity to noises and lights, numbness, tingling in her hands and feet, and reduced cognitive abilities. Some medications help with pain but their effects wear off after a few hours and she does not want to take "too much." Tr. 54. She no longer helps at all with cleaning, laundry, or food preparation. When she drives, it is painful to turn her neck to see into her blind spot. She tries to walk daily but sometimes can walk for only five to ten minutes. She sometimes needs help combing her hair. She does not read or watch television much for

comprehension reasons. Her difficulty concentrating comes from lack of sleep and from pain. She has symptoms of a panic attack "[a]lmost once a day" and despite increased dosage her medication to control those attacks is not working. Tr. 59. On a good day, her pain is a five out of ten. But she reported little functional difference between good days and bad days; "every day is pretty much the same[.]" Tr. 60.

The ALJ gave less weight to plaintiff's testimony about her symptoms for several reasons. First, he cited inconsistencies between the way plaintiff described her symptoms in connection with her application for disability benefits and her contemporaneous reports to healthcare providers and government agencies. An ALJ may consider a range of facts in assessing how much weight to give to subjective symptom testimony, including prior inconsistent statements concerning the symptoms. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Here, the majority of the inconsistencies identified by the ALJ do not pass muster. For example, the ALJ found that plaintiff reported during the application process that she sometimes needed help brushing her hair, a statement he found inconsistent with her June 2012 statement to her orthopedic surgeon that she "has been able to more activities of daily living including washing her hair[.]" Tr. 513. The ALJ's finding on this point is not supported by substantial evidence. There is no inconsistency between those two statements. As plaintiff points out, *washing* hair and *brushing* hair are two different activities requiring different reaching and strength abilities. The ALJ also found that plaintiff "denied social outings" but "admitted" going to the library, post office, and gas station. A reasonable person answering a question about social outings would not understand solo trips to the library, post office, or gas station to be included in the question. The ALJ further asserted that plaintiff at one point said she stopped driving due to her symptoms but at the hearing said she did not drive because of the poor

condition of her car. But immediately after noting the condition of her vehicle, plaintiff explained that she has difficulty turning her neck to look into her blind spot. Finally, the ALJ noted that plaintiff received unemployment benefits from late 2011 through 2012 and again in 2013. Because only individuals who have held themselves out as able to work can receive unemployment compensation, receipt of such benefits can influence the weight given to testimony about completely disabling symptoms. *Carmickle v. Astrue*, 533 F.3d 1155, 1161–62 (9th Cir. 2008). But because "the record here does not establish whether [plaintiff] held herself out as available for full-time or part-time work," there is no clear inconsistency between her receipt of unemployment benefits and her claim that she is disabled. *Id.* at 1162. The foregoing four examples of purportedly inconsistent statements cannot support the ALJ's decision to give less weight to plaintiff's testimony.

However, the ALJ identified two additional inconsistencies, and his findings regarding those statements are supported by substantial evidence. The ALJ found plaintiff's testimony at the hearing that she goes for short walks of less than a mile and needs to rest often inconsistent with her contemporaneous statements to providers that she walked for up to two miles per day. Although those statements are arguably consistent with one another, the ALJ reasonably found them to be inconsistent. The ALJ also cited a July 2012 treatment note documenting plaintiff's report to her orthopedic surgeon that she was "not having any pain at night and no difficulty sleeping[.]" Tr. 519. Plaintiff insists that the note addresses her shoulder pain only, but plaintiff's statements about no pain and no trouble sleeping are phrased without any such restriction. The ALJ reasonably found those July 2012 statements inconsistent with plaintiff's 2013 hearing testimony that physical therapy and medication had not provided her with much pain relief.

Page 8 – OPINION AND ORDER

I turn next to the ALJ's finding that plaintiff's symptom testimony was unsupported by, and sometimes inconsistent with, the medical record. Inconsistency between a claimant's symptom testimony and the medical record is a valid consideration in assigning weight to the symptom testimony. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ supported his finding on this point with citations to the medical record noting that plaintiff reports *right*-side pain symptoms even though her MRI shows *left*-side foraminal stenosis; that plaintiff reported only limited shoulder pain/stiffness improvement even though physical therapy examinations revealed normal strength and range of motion; and that multiple medical providers reported that she was doing well with regard to specific impairments. Fibromyalgia, which the ALJ identified as one of plaintiff's severe impairments, is a pain disorder that eludes of objective measurement. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Plaintiff's physical therapist expressly acknowledged the fibromyalgia diagnosis and observed, in the progress note discharging her from physical therapy, that any persistent pain was likely "related to stress in her life and her recent diagnosis of fibromyalgia." Tr. 496. Accordingly, I conclude that the absence of an objectively measurable cause for all of plaintiff's pain is not a convincing reason to give less weight to her testimony.

The ALJ also found that, with the exception of the shoulder surgery, plaintiff had generally pursued routine, conservative treatment and that her providers reported that treatment was effective. Conservative and/or effective treatment can be a convincing reason to give less weight to a claimant's description of her symptoms. *Tommasetti v. Astrue*, 533 F.3d 1039, 1040 (9th Cir. 2008). The ALJ noted that plaintiff had not been hospitalized for any significant period of time. He also stated that plaintiff's providers had regularly recommended treatments like exercise, physical therapy, and counseling. Finally, he cited treatment records documenting that

plaintiff's fibromyalgia pain improved with physical activity and medication. Having carefully reviewed the medical record, I conclude that the ALJ reasonably found that plaintiff pursued mostly conservative or routine treatment and that such treatment had been moderately effective in relieving her symptoms. That routine, effective treatment is a clear, convincing reason to give less weight to plaintiff's testimony that her symptoms are completely disabling.

Finally, the ALJ found plaintiff's description of her symptoms inconsistent with her self-reported activities of daily living. Discussion of activities of daily living may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ concluded that plaintiff did more on a daily basis than someone with symptoms as severe those she described would be able to do. He noted that plaintiff was able to manage her personal care, prepare meals, perform household chores, care for her daughter, work part-time, lift and carry wood, read, and walk up to two miles daily. Although those activities are not the equivalent of full-time work, the ALJ reasonably found them inconsistent with the severity of symptoms described in plaintiff's 2012 Adult Function Report and at the 2013 hearing. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even when those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment.")

In sum, the ALJ made several errors in evaluating plaintiff's testimony. Nevertheless, he supported his decision to give less weight to that testimony with several clear, convincing, specific reasons supported by substantial evidence in the record. I therefore must uphold his decision to assign less weight to plaintiff's testimony. *See Carmickle*, 533 F.3d at 1162 ("[T]he

relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . but it is whether the ALJ's decision remains legally valid, despite such error.").

II.  *Dr. Pearson's Opinion*

Plaintiff next argues that the ALJ erred in rejected the opinion of her treating physician, Dr. Pearson. There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; 20 C.F.R. § 404.1527(d). Where there is a conflict between two medical opinions, the ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although the ultimate decision regarding disability is reserved to the Commissioner, 20 C.F.R. § 404.1520(e)(1), the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Dr. Pearson has been plaintiff's primary care provider for more than fifteen years. In September 2013, he filled out a questionnaire[1] in which he opined that plaintiff has fibromyalgia;

---

[1] The Commissioner notes that the forms Dr. Pearson filled out were check-box questionnaires. That fact is immaterial to my analysis. *Cf. Popa v. Berryhill*, 872 F.3d 901, 907

Page 11 – OPINION AND ORDER

left shoulder rotator cuff tear, status post surgery; moderate foraminal spinal stenosis at C6-7; severe sleep apnea; anxiety with panic attacks; carpal tunnel syndrome; and atrial fibrillation. Dr. Pearson stated that plaintiff is unable to lift or carry more than five pounds; can sit, stand, or walk for a maximum of one hour at a time; and must rest by lying down for thirty minutes after one to two hours of activity. Dr. Pearson predicted that plaintiff would miss four or days of work per month and would be off task more than ten percent of the time. He characterized her prognosis as "guarded," noting that he did not expect improvement but hoped her condition would not worsen. Tr. 591. He expressly stated that her limitations had persisted at the same severity level since September 16, 2011. In October 2015, Dr. Pearson filled out another check-box questionnaire endorsing the same limitations and stating that plaintiff's condition has "remained the same" and "worsened" in the intervening two years. Tr. 665. Dr. Pearson opined that plaintiff is unable to work.

Dr. Pearson's opinion about plaintiff's limitations conflicts with the opinion of the reviewing agency physicians, so the ALJ was required to provide specific, legitimate reasons to reject it. The ALJ gave limited weight to Dr. Pearson's opinion for several reasons. First, he found Dr. Pearson's opinion inconsistent with his own treatment notes. Such inconsistency is a valid reason to discredit a physician's opinion. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 692–93 (9th Cir. 2009). Here, however, the ALJ did not cite any specific treatment notes to support the purported inconsistency, and no discrepancy is apparent from my review of the record. Accordingly, this is not a sufficiently specific reason to reject Dr. Pearson's opinion.

The ALJ also found Dr. Pearson's opinion inconsistent with other medical evidence in the record. That sort of inconsistency may justify giving less weight to a medical opinion.

---

(9th Cir. 2017) ("[T]he fact that [a source] provided information in a check-box form provides no reason to reject her opinion, much less a germane reason.").

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602–03 (9th Cir. 1999). The ALJ cited physical therapy records documenting steady improvement post-injury and predicting that plaintiff would be able to return to work within a few weeks of a November 2011 appointment. The ALJ also noted that, post-surgery, a physician's assistant deemed plaintiff's shoulder impairment non-disabling. Those records are legitimate considerations in evaluating Dr. Pearson's opinion, but their evidentiary weight is weak. As plaintiff correctly points out, both the physical therapist and the physician's assistant were focused specifically on her rotator cuff tear rather than on all her impairments in combination.

The ALJ further found Dr. Pearson's evaluation of plaintiff's physical limitations and opinion that plaintiff was unable to work, would be absent more than four days per month, and would be off-task more than ten percent of the time inconsistent with plaintiff's activities of daily living and work history. Having reviewed the record, that is a specific, legitimate reason to discredit Dr. Pearson's opinion. *See Ghanim*, 763 F.3d at 1162 (upholding inconsistency between daily activities and a treating provider's opinion as a specific, legitimate reason to discount that opinion). Dr. Pearson did not explain the rationale behind his opinion regarding plaintiff's absenteeism or need for thirty-minute rest breaks, and the ALJ reasonably found those limitations inconsistent with the part-time work plaintiff was able to do for the better part of a year as well as with her self-reported daily activities.

Finally, the ALJ discredited Dr. Pearson's opinion because it was based largely on plaintiff's subjective self-reports. Because plaintiff's symptom testimony was given less weight for clear, convincing reasons, that justification is legally valid. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Reviewing the record as a whole, the ALJ supported his rejection of Dr. Pearson's opinion with specific, legitimate reasons supported by substantial evidence.

III. *Step Five Finding*

Plaintiff's final allegation of error is that the Commissioner failed to carry her burden at step five because all three jobs the ALJ identified exceed plaintiff's RFC. *See Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) ("[T]he Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite [her] identified limitations.") (internal quotation marks omitted) (alterations normalized). The Commissioner concedes that two of the three jobs, counter clerk and usher/public attendant, exceed plaintiff's social limitations as set forth in the RFC. Accordingly, the only question is whether the requirements of shipping-and-receiving weigher are consistent with plaintiff's RFC.

The parties' dispute focuses on GED Reasoning Level. There are six GED Reasoning Levels, ranging from Level 1 (the simplest) to Level 6 (the most complex.) Dictionary of Occupational Titles ("DOT") App'x C, 1991 WL 788702 (Jan. 1, 2016). Shipping-and-receiving weigher has a GED Reasoning Level of 3. DOT 222.387-074. A position classified at that level requires the employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT App'x C. By comparison, GED Reasoning Level 2 jobs require the employee to "[a]pply commonsense understanding to carry out detailed by uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.* Plaintiff contends that a GED Reasoning Level 3 job exceeds her RFC because she is limited to simple, repetitive, routine tasks.

In support of her argument, plaintiff cites *Zavalin*, in which the plaintiff's RFC also contained a limitation to simple, repetitive, routine tasks. 778 F.3d at 845. In that case, the Ninth Circuit held that there is an "apparent conflict between the [RFC] to perform simple,

repetitive tasks and the demands of Level 3 Reasoning." *Id.* at 847. As the Commissioner concedes, *Zavalin* directs the conclusion that the ALJ here erred: there is an apparent conflict between plaintiff's RFC and her ability to meet the demands of the position of shipping-and-receiving weigher.

The Commissioner contends, however, that the error was harmless. In *Zavalin*, the Commissioner argued that plaintiff's success in high school and use of computers demonstrated that he was, in fact, capable of performing the GED Reasoning Level 3 jobs identified at step five. *Id.* at 848. The Ninth Circuit rejected that argument. The court noted that, "although the record shows that Zavalin did well in math, it was in the context of a special education program." *Id.* Moreover, the court noted that it was improper to consider Zavalin's computer and video game use because "the ALJ did not rely on this evidence." *Id.* And even if the computer and video game use were considered, the court was "not persuaded that it shows Zavalin possesses the requisite reasoning ability because there is no indication of the extent or manner of his computer use, or the complexity of the video games." *Id.*

The Commissioner argues that plaintiff's completion of two years of college and prior experience working in a GED Reasoning Level 3 job (waitress) shows that she can, in fact, meet the mental demands of level 3. As an initial matter, the ALJ did not rely on those reasons; under *Zavalin*, therefore, it is improper to consider them now in evaluating whether the error was harmless. *Id.* Moreover, just as in *Zavalin*, even consideration of those reasons does not establish harmlessness. The ALJ expressly found that plaintiff could not perform any of her past work because that work exceeded either the physical (lifting) limitation in her RFC or the simple, routine task limitation in her RFC. He did not specify which jobs exceeded which limitation, so it is unclear from the record whether the ALJ found plaintiff unable to work as a waitress in part

because of the reasoning demands of the job. Accordingly, plaintiff's previous work as a waitress does not establish that she can perform GED Reasoning Level 3 jobs now. Similarly, plaintiff completed two years of college years ago, before she began having her current pain symptoms. The ALJ adopted the simple, routine, repetitive tasks limitation from the state agency consultants' opinions. That limitation is tied not to any cognitive impairment but to physical pain, which interferes with her memory, comprehension, and concentration. Tr. 112. Plaintiff's ability to complete two years of college does not establish that she can meet the requirements of GED Reasoning Level 3. The step five error was not harmless.[2]

## CONCLUSION

The Commissioner's decision is REVERSED AND REMANDED for further proceedings and this appeal is dismissed.

IT IS SO ORDERED.

Dated this 15 day of May 2018.

_____
Ann Aiken
United States District Judge

---

[2] Because the ALJ's only harmful error was at step five, remand for further proceedings is the proper course. The credit-as-true rule, which sometimes permits remand for an immediate award of benefits, does not apply in a case like this; there is no discredited evidence that can be credited as true.

Page 16 – OPINION AND ORDER